Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com

[Additional Counsel on Signature Page]

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP KRIEGER, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>PATTERN ENERGY GROUP INC., ALAN R. BATKIN, MICHAEL MORGAN GARLAND, EDMUND JOHN PHILIP BROWNE, PATRICIA M. NEWSON, MONA K. SUTPHEN, RICHARD A. GOODMAN and DOUGLAS G. HALL, )<br><br>Defendants. ) | Case No. 3:19-cv-8437<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

Plaintiff Phillip Krieger ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Pattern Energy Group Inc. ("Pattern" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Pattern, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Transaction") between Pattern and Canada Pension Plan Investment Board ("CPPIB").

2.      On November 3, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $26.75 in cash for each share of Pattern stock they own (the "Merger Consideration").

3.      On December 13, 2019, in order to convince Pattern shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form PREM14A Preliminary Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading Proxy violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9), each of which constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby

- 1 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that Pattern shareholders vote in favor of the Proposed Transaction; and (ii) the summary of certain valuation analyses conducted by Pattern's financial advisor, Evercore Group L.L.C. ("Evercore") in support of its opinion that the Merger Consideration is fair to shareholders, on which the Board relied.

6.      It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Transaction.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. § 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to Pattern shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C.

§ 78aa, as well as under 28 U.S.C. § 1391, because Pattern maintains its principal executive

offices in this District.

## **PARTIES**

11.     Plaintiff is, and at all relevant times has been, a holder of Pattern common stock.

12.     Defendant Pattern is incorporated in Delaware and maintains its principal

executive offices at 1088 Sansome Street, San Francisco, California 94111.  The Company's

common stock trades on the NASDAQ under the ticker symbol "PEGI."

13.     Individual Defendant Alan R. Batkin is Pattern's Chairman and has been a

director of Pattern since October 2013.

14.     Individual Defendant Michael Morgan Garland is Pattern's Chief Executive

Officer and has been a director of Pattern since October 2012.

15.     Individual Defendant Edmund John Philip Browne has been a director of Pattern

since October 2013.

16.     Individual Defendant Patricia M. Newson has been a director of Pattern since

January 2012.

17.     Individual Defendant Mona K. Sutphen has been a director of Pattern since

December 2018.

18.     Individual Defendant Richard A. Goodman has been a director of Pattern since

December 2018.

19.     Individual Defendant Douglas G. Hall has been a director of Pattern since

October 2013.

- 3 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

1    20.    The Individual Defendants referred to in paragraphs 13-19 are collectively

2    referred to herein as the "Individual Defendants" and/or the "Board."

3                    **CLASS ACTION ALLEGATIONS**

4    21.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of

5    himself and the other public shareholders of Pattern (the "Class").  Excluded from the Class are

6    Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated

7    with any Defendant.

8    22.    This action is properly maintainable as a class action because:

9            a.    The Class is so numerous that joinder of all members is impracticable.  As

10   of December 5, 2019, there were approximately 98,000,000 shares of Pattern common

11   stock outstanding, held by hundreds of individuals and entities scattered throughout the

12   country.  The actual number of public shareholders of Pattern will be ascertained through

13   discovery;

14           b.    There are questions of law and fact that are common to the Class that

15   predominate over any questions affecting only individual members, including the

16   following:

17                        i)    whether Defendants disclosed material information that includes

18                              non-GAAP financial measures without providing a reconciliation

19                              of the same non-GAAP financial measures to their most directly

20                              comparable GAAP equivalent in violation of Section 14(a) of the

21                              Exchange Act;

22                        ii)    whether Defendants have misrepresented or omitted material

23                              information concerning the Proposed Transaction in the Proxy in

24                              violation of Section 14(a) of the Exchange Act;

25                        iii)   whether the Individual Defendants have violated Section 20(a) of

26                              the Exchange Act; and

27

28
- 4 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF**
**THE SECURITIES EXCHANGE ACT OF 1934**

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    The Proposed Transaction**

23.     Pattern is a vertically integrated renewable energy company whose business consists of a portfolio of high-quality renewable energy power projects that produce long-term stable cash flows and ownership interests in an upstream development platform aligned with the Company's operating business segment. Pattern has ownership interests in 24 renewable energy

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1 projects with an operating capacity that totals approximately 4 gigawatts located in the United

2 States, Canada and Japan.

3     24.    On November 4, 2019, Pattern and CPPIB issued a joint press release announcing

4 the Proposed Transaction, which states in pertinent part:

> SAN FRANCISCO and TORONTO and NEW YORK, Nov. 4,
> 2019 /PRNewswire/ -- Pattern Energy Group Inc. (Nasdaq and TSX: PEGI)
> ("Pattern Energy" or "the Company") and Canada Pension Plan Investment Board
> ("CPPIB") today announced they have entered into a definitive agreement,
> pursuant to which CPPIB will acquire Pattern Energy in an all-cash transaction
> for $26.75 per share, implying an enterprise value of approximately $6.1 billion,
> including net debt.
>
> CPPIB and Riverstone Holdings LLC ("Riverstone") have concurrently entered
> into an agreement pursuant to which, at or following the completion of the
> proposed acquisition of Pattern Energy by CPPIB, CPPIB and Riverstone will
> combine Pattern Energy and Pattern Energy Group Holdings 2 LP ("Pattern
> Development") under common ownership, bringing together the operating assets
> of Pattern Energy with the world class development projects and capabilities of
> Pattern Development.
>
> Under the terms of the merger agreement, Pattern Energy shareholders will
> receive $26.75 in cash consideration for each share of Pattern Energy,
> representing a premium of approximately 14.8% to Pattern Energy's closing share
> price on August 9, 2019, the last trading day prior to market rumors regarding a
> potential acquisition of the Company. The consideration also represents a 15.1%
> premium to the 30-day volume weighted average price prior to that date.
>
> The Pattern Energy management team, led by Mike Garland, will lead the
> combined enterprise.
>
> "This agreement with CPPIB and Riverstone provides certain and significant
> value for Pattern Energy shareholders with an all cash transaction at a very
> attractive stock price," said Mike Garland, CEO of Pattern Energy. "Over the
> years, Pattern Energy has been able to provide shareholders with a consistent
> dividend and now our shareholders can realize the value embedded in the
> Company. We believe the proposed transaction reflects the strength of the
> platform we have built."
>
> "In reaching this transaction, the Pattern Energy Board of Directors undertook a
> robust process that we believe culminated in a transaction that delivers value to
> shareholders," said Alan Batkin, Chairman of the Pattern Energy Board of
> Directors. "As part of this process, the Board formed a special committee,

- 6 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

composed of independent directors that directed the process at all times, and retained independent legal and financial advisors to assist our review of the transaction and provide a fairness opinion. The special committee reviewed multiple bids as part of a thorough process that involved multiple parties and evaluated the transaction against the Company's standalone prospects, performance and outlook relative to historic trading multiples and yields. Based on this review and in light of the transaction structure, the special committee unanimously determined that this transaction is in the best interest of the Company's shareholders and recommended it to the full Pattern Energy Board, which also determined that this transaction is advisable and in the best interests of the Company's shareholders. The transaction delivers significant, immediate and certain value to the Company's shareholders."

"Pattern Energy is one of the most experienced renewables developers in North America and Japan with a high-quality, diversified portfolio of contracted operating assets, aligning well with CPPIB's renewable energy investment strategy and the increasing global demand for low-carbon energy," said Bruce Hogg, Managing Director, Head of Power and Renewables, CPPIB. "The Pattern Energy management team has a proven track record of identifying and executing development strategies with differentiated competitive advantages. We look forward to working with Pattern Energy and Riverstone to grow the company."

"We have long been believers in Pattern Energy and have had a successful partnership with the Company since we first invested in it more than 10 years ago," said Chris Hunt and Alfredo Marti, Partners at Riverstone. "We have worked closely with Mike and the Pattern Energy team to grow the Company from a development startup into a multinational operator and supplier of low cost, renewably sourced energy. We are confident the team will continue to develop world-class wind and solar assets, which will be an important part of our transition to cleaner forms of power generation. We look forward to continuing to support them in driving the Company's next phase of development."

**Transaction Details**

The transaction is expected to close by the second quarter of 2020, subject to Pattern Energy shareholder approval, receipt of the required regulatory approvals, and other customary closing conditions. The Pattern Energy transaction is not contingent upon the completion of the Pattern Development transaction.
Upon the completion of the transaction, Pattern Energy will become a privately held company and shares of Pattern Energy's common stock will no longer be listed on any public market. Pattern Energy will continue paying its quarterly dividend through the transaction close.

**Advisors**

Evercore and Goldman, Sachs & Co. LLC are acting as independent financial

- 7 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

advisors to Pattern Energy's special committee, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as independent legal counsel to the special committee.

**About Pattern Energy**

Pattern Energy Group Inc. (Pattern Energy) is an independent power company listed on the Nasdaq Global Select Market and Toronto Stock Exchange. Pattern Energy has a portfolio of 28 renewable energy projects with an operating capacity of 4.4 GW in the United States, Canada and Japan that use proven, best-in-class technology. Pattern Energy's wind and solar power facilities generate stable long-term cash flows in attractive markets and provide a solid foundation for the continued growth of the business. For more information, visit www.patternenergy.com.

**About Pattern Development**

Pattern Development is a leader in developing renewable energy and transmission assets. With a long history in wind energy, Pattern Development has developed, financed and placed into operation more than 4,000 MW of wind and solar power projects. A strong commitment to promoting environmental stewardship drives the company's dedication in working closely with communities to create renewable energy projects. Pattern Development has offices in San Francisco, San Diego, Houston, New York, Toronto, Mexico City, and Tokyo. For more information, visit www.patterndev.com.

**About CPPIB**

Canada Pension Plan Investment Board (CPPIB) is a professional investment management organization that invests the funds not needed by the Canada Pension Plan (CPP) to pay current benefits in the best interests of 20 million contributors and beneficiaries. In order to build diversified portfolios of assets, CPPIB invests in public equities, private equities, real estate, infrastructure and fixed income instruments. Headquartered in Toronto, with offices in Hong Kong, London, Luxembourg, Mumbai, New York City, San Francisco, São Paulo and Sydney, CPPIB is governed and managed independently of the Canada Pension Plan and at arm's length from governments. At June 30, 2019, the CPP Fund totalled C$400.6 billion. For more information about CPPIB, please visit www.cppib.com or follow us on LinkedIn, Facebook or Twitter.

**About Riverstone Holdings**

Riverstone is an energy and power-focused private investment firm founded in 2000 by David M. Leuschen and Pierre F. Lapeyre, Jr. with over $39 billion of equity capital raised to date. Riverstone conducts buyout and growth capital investments in the exploration & production, midstream, oilfield services, power

- 8 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

and renewable sectors of the energy industry. With offices in New York, London, Houston and Mexico City, the firm has committed approximately $40 billion to more than 180 investments in North America, South America, Europe, Africa, Asia, and Australia.

25.     Pattern is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

26.     If the false and/or misleading Proxy is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

**II.     The Materially Incomplete and Misleading Proxy**

27.     On December 13, 2019, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*The Materiality of Financial Projections*

28.     A company's financial forecasts are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

approve the transaction.  Here, the Proxy discloses that "[t]he Forecasts about Pattern are included in this proxy statement only because (1) the Forecasts were made available to CPPIB and other interested parties in connection with the due diligence review of Pattern; (2) the Forecasts were made available to Evercore for use in connection with its financial analysis . . . and (3) the Forecasts were made available to our Board in connection with Pattern's exploration and evaluation of strategic alternatives to maximize stockholder value, including a sale of Pattern." Proxy 67-68.

29.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regard to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

30.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format." 17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items." 17 C.F.R. § 229.10(b)(2).

31.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are*

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

*most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

(ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

32.     Here, Pattern's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board specifically relied on the financial forecasts to "approve and declare advisable the Merger Agreement and the transactions contemplated thereby, including the Merger" and "declare that it is fair to and in the best interests of Pattern and our stockholders that Pattern enter into the Merger Agreement and consummate the Merger on the terms and subject to the conditions set forth in the Merger Agreement[.]"  Proxy 54.

33.     As discussed further below, the non-GAAP financial projections here do not provide Pattern's shareholders with a materially complete understanding of the assumptions and key factors considered in developing financial projections, which assumptions, factors and other inputs the Board reviewed.

***The Financial Projections Relied on by the Board***

34.     The Proxy discloses that "[t]he Forecasts about Pattern are included in this proxy statement only because (1) the Forecasts were made available to CPPIB and other interested parties in connection with the due diligence review of Pattern; (2) the Forecasts were made available to Evercore for use in connection with its financial analysis . . . and (3) the Forecasts

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

were made available to our Board in connection with Pattern's exploration and evaluation of strategic alternatives to maximize stockholder value, including a sale of Pattern." *Id.* at 67-68.

35.     The Proxy further discloses that the assumptions used in the financial projections were "prepared on a reasonable basis, reflected the best estimates and judgments available to Pattern's management at the time and presented, to the best of Pattern's management's knowledge and belief, the expected course of action and Pattern's expected future financial performance as of the date such information was prepared."  *Id.* at 68.

36.     The Proxy goes on to disclose, *inter alia*, forecasted values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics for 2020 through 2023 for: (1) Adjusted EBITDA; (2) Corporate EBITDA; (3) Cash Available for Distribution; and (4) After-Tax Equity Cash Flow, but fails to provide (i) the line items used to calculate these non-GAAP metrics or (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures.  *Id.* at 69.

37.     The Proxy fails to define Adjusted EBITDA, reconcile Adjusted EBITDA to its most comparable GAAP measure, or disclose the line items used to calculate Adjusted EBITDA, rendering the Proxy materially false and/or misleading.  *Id.*

38.     The Proxy fails to define Corporate EBITDA, reconcile Corporate EBITDA to its most comparable GAAP measure, or disclose the line items used to calculate Corporate EBITDA, rendering the Proxy materially false and/or misleading.  *Id.*

39.     The Proxy fails to define Cash Available for Distribution, reconcile Cash Available for Distribution to its most comparable GAAP measure, or disclose the line items used to calculate Cash Available for Distribution, rendering the Proxy materially false and/or misleading.  *Id.*

40.     The Proxy defines After-Tax Equity Cash Flow as "Project Distributions, less corporate general and administrative costs, less corporate interest cost, less acquisition expense, less debt repayments, plus asset divestiture proceeds, plus new debt issuance, plus Pattern

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1   Development Distributions." *Id.* at 69. n.2.  Nevertheless, the Proxy fails to reconcile After-Tax

2   Equity Cash Flow to its most comparable GAAP measure or disclose the line items used to

3   calculate After-Tax Equity Cash Flow, rendering the Proxy materially false and/or misleading.

4   *Id.*

5          41.     Thus, the Proxy's disclosure of these non-GAAP financial forecasts provides an

6   incomplete and materially misleading understanding of the Company's future financial prospects

7   and the inputs and assumptions for which those prospects are based upon.  It is clear that those

8   inputs and assumptions were in fact forecasted and utilized in calculating the non-GAAP

9   measures disclosed and relied on by the Board to recommend the Proposed Transaction in

10  violation of Section 14(a) of the Exchange Act.

11         42.     The financial projections disclosed on page 69 of the Proxy violate Section 14(a)

12  of the Exchange Act because: (i) the use of such forecasted non-GAAP financial measures alone

13  violates SEC Regulation G, as a result of Defendants' failure to reconcile those non-GAAP

14  measures to their closest GAAP equivalent or otherwise disclose the specific financial

15  assumptions and inputs used to calculate the non-GAAP measures; and (ii) they violate SEC

16  Rule 14a-9 because they are materially misleading, as without any correlation with their GAAP

17  equivalent financial metrics shareholders are unable to discern the veracity of the financial

18  projections.

19         43.     As such, this information must be disclosed in order to cure the materially

20  misleading disclosures regarding both the financial projections developed by the Company as

21  well as the projections relied upon by the Company's financial advisors.

22         ***The Financial Projections Violate Regulation G***

23         44.     The SEC has acknowledged that potential "misleading inferences" are

24  exacerbated when the disclosed information contains non-GAAP financial measures[1] and

25  _____

26  [1]     Non-GAAP financial measures are numerical measures of future financial performance
    that exclude amounts or are adjusted to effectively exclude amounts that are included in the most
27  directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).

28
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

1    adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-

2    GAAP financial measures."[3]

3          45.    Defendants must comply with Regulation G.  More specifically, the company

4    must disclose the most directly comparable GAAP financial measure and a reconciliation (by

5    schedule or other clearly understandable method) of the differences between the non-GAAP

6    financial measure disclosed or released with the most comparable financial measure or measures

7    calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the

8    SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP

9    financial measures

10   . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate

11   pricing of securities."[4]

12         46.    Moreover, the SEC has publicly stated that the use of non-GAAP financial

13   measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the

14   frequent use by publicly traded companies of unique company-specific non-GAAP financial

15   measures (as Pattern included in the Proxy here) implicates the centerpiece of the SEC's

16   disclosures regime:

17           In too many cases, the non-GAAP information, which is meant to supplement the
        GAAP information, has become the key message to investors, crowding out and
18           effectively supplanting the GAAP presentation. Jim Schnurr, our Chief

19   _____

20   [2]    Item 10 of Regulations S-K and S-B were amended to reflect the requirements of
Regulation G.

21   [3]    SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (Jan. 22, 2003),
22   *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule*").

23   [4]    SEC, *Final Rule.*

24   [5]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's
Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation
(June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-
25   measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies
Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at*
26   http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-
into-profits.html?_r=0.

27

28                              - 14 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

47.    The SEC has required compliance with Regulation G, including reconciliation requirements, in other merger transactions. *Compare Youku Tudou Inc., et al.*, Correspondence 5 (Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP financials relating to a business combination),[7] *with Youku Tudou Inc., et al.*, SEC Staff Comment Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A and is thus not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*, Correspondence 29 (Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have added a reconciliation of actual and projected EBIT to GAAP net income . . . .").[9]

48.    Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a). Thus, in order to bring the Proxy into

---

[6]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

[7]    *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm.

[8]    *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/filename1.pdf.

[9]    *Available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/filename1.htm. *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial measures. Please revise to provide the disclosure required by Rule 100 of Regulation G."), *available at* https://www.sec.gov/Archives/edgar/data/907687/000000000010060087/filename1.pdf. *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4. The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the

- 15 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

### *The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9*

49.    In addition to the Proxy's violation of Regulation G, the lack of reconciliation or, at the very least, the line items utilized in calculating the non-GAAP measures render the financial forecasts disclosed materially misleading, as shareholders are unable to understand the differences between the non-GAAP financial measures and their respective most comparable GAAP financial measures. Nor can shareholders compare the Company's financial prospects with similarly situated companies.

50.    Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading for the reasons discussed above.  Indeed, Defendants acknowledge "non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures, and may be different from non-GAAP financial measures used by other companies. Furthermore, there are limitations inherent in non-GAAP financial measures, because they exclude charges and credits that are required to be included in a GAAP presentation. Accordingly, these non-GAAP financial measures should be considered together with, and not as an alternative to, financial measures prepared in accordance with GAAP." Proxy 69.

51.    As such, financial projections are plainly material, and shareholders would clearly want a complete and non-misleading understanding of those projections.

---

reconciliation required under Rule 100(a) of Regulation G"), *available at* https://www.sec.gov/Archives/edgar/data/789132/000000000017025180/filename1.pdf.  The SEC Office of Mergers and Acquisitions applied Regulation G in these transactions, which reflects the SEC's official position.  Any claim that the SEC has officially sanctioned the use of non-GAAP financial forecasts for business combinations when the Board itself created and relied on such non-GAAP forecasts to recommend a transaction such as the Proposed Transaction is incorrect. The SEC's website provides certain unofficial guidance for certain matters, called Compliance and Disclosure Interpretations ("C&DI's"), which through the use of Q&As reflect the views of particular SEC staff and on which certain issuers have in the past claimed an exemption from Regulation G.  The SEC itself expressly disclaims C&DI's as they are not regulations that have been reviewed by the SEC, and the SEC expressly states that they are not binding and should not be relied on.  *See* www.sec.gov/divisions/corpfin/cfguidance.shtml.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

52.     In order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on page 69, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

### The Materially Misleading Financial Analyses

53.     The summary of the valuation methodologies utilized by Evercore, including the utilization of certain of the non-GAAP financial projections described above by Evercore, in connection with its valuation analyses, (*id.* at 59-60) is misleading in violation of Rule 14a-9. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently.  Once a proxy discloses internal projections relied upon by the Board, those projections must be complete and accurate.

54.     With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy does not disclose Pattern's net debt, the implied value for Pattern's ownership in Pattern Development, or the number of fully diluted shares outstanding used in the TEV/Adjusted EBITDA multiple portion of the analysis. *Id.* at 63.

55.     With respect to Evercore's *Selected Transactions Analysis*, the Proxy does not disclose Pattern's net debt, the implied value for Pattern's ownership in Pattern Development, or the number of fully diluted shares outstanding used in the Adjusted EBITDA Multiples portion of the analysis.  *Id.* at 64-65.

56.     The Proxy fails to disclose Evercore's prior relationship with Pattern and CPPIB, including the nature, timing, and amount of payment for past services that Evercore has provided. *Id.* at 67.

57.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy states that Evercore performed a discounted cash flow analysis of Pattern discounting the standalone, levered, after-tax free cash flows to the equity of Pattern plus distributions from Pattern

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Development. *Id.* at 65. Evercore included Pattern Development distributions from 2019 through 2027, as provided by management. *Id.* Evercore calculated terminal values for Pattern (excluding Pattern Development) by applying a range of multiples of Cash Available for Distribution of 11.5x to 13.5x to a next twelve month terminal year estimate of the Cash Available for Distribution of Pattern using the 2024 Cash Available for Distribution estimates provided by management, and by applying perpetuity growth of (1.00)% to 1.00% to a terminal year estimate of the levered after-tax free cash flows to equity that Pattern calculated by taking the 2023 after-tax cash flows to equity and excluding any revolver paydown. *Id.* Evercore used a discount rate range of 7.5% to 9.5%, calculated as the Company's cost of equity, for the after-tax cash flows to equity and terminal values of Pattern and a discount rate of 12.5% to 17.5% for the Pattern Development distributions. *Id.*

58.     The Proxy fails to disclose the values of the Pattern Development distribution for 2024-2027, the range of terminal values calculated by Evercore for both the Cash Available for Distribution multiple to next twelve month terminal year estimate of Cash Available for Distribution method and the perpetuity growth rate method, any of the inputs that went into calculating the Company's cost of equity or the inputs used for calculating the expected return of the Pattern Development distributions, what, if any, enterprise value adjustments were made, or the number of fully diluted shares outstanding.

59.     Since information was omitted, shareholders are unable to discern the veracity of Evercore's *Discounted Cash Flow Analysis*.  Without further disclosure, shareholders are unable to compare Evercore's calculations with the Company's financial projections.  The absence of any single piece of the above information renders Evercore's *Discounted Cash Flow Analysis* incomplete and misleading.  Thus, the Company's shareholders are being materially misled regarding the value of the Company.

60.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

61.    Therefore, in order for Pattern shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

62.    In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from Pattern shareholders.

63.    Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

64.     Further, failure to remedy the deficient Proxy and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## COUNT I
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

65.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

67.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

68.     The failure to reconcile the non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

69.     As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

1  Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the

2  difference between the value they will receive as a result of the Proposed Transaction and the

3  true value of their shares prior to the merger) in an amount to be determined at trial and are

4  entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

5  **<u>COUNT II</u>**

6  **(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

7  70.   Plaintiff incorporates each and every allegation set forth above as if fully set forth

8  herein.

9  71.   SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration

10  statements that contain "any statement which, at the time and in the light of the circumstances

11  under which it is made, is false or misleading with respect to any material fact, or which omits to

12  state any material fact necessary in order to make the statements therein not false or

13  misleading[.]" 17 C.F.R. § 240.14a-9(a).

14  72.   Regulation G similarly prohibits the solicitation of shareholder votes by

15  "mak[ing] public a non-GAAP financial measure that, taken together with the information

16  accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a*

17  *material fact necessary in order to make the presentation of the non-GAAP financial measure . .*

18  *. not misleading.*" 17 C.F.R. § 244.100(b) (emphasis added).

19  73.   Defendants have issued the Proxy with the intention of soliciting shareholder

20  support for the Proposed Transaction. Each of the Defendants reviewed and authorized the

21  dissemination of the Proxy, which fails to provide critical information regarding, amongst other

22  things, the financial projections for the Company.

23  74.   In so doing, Defendants made untrue statements of fact and/or omitted material

24  facts necessary to make the statements made not misleading. Each of the Individual Defendants,

25  by virtue of their roles as directors and/or officers, were aware of the omitted information but

26  failed to disclose such information, in violation of Section 14(a). The Individual Defendants

27

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

75. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

76. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

77. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

78. Pattern is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

79. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

80. As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

<u>**COUNT III**</u>
**(Against the Individual Defendants for Violations**
**of Section 20(a) of the Exchange Act)**

81.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

82.     The Individual Defendants acted as controlling persons of Pattern within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors and/or officers of Pattern, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

83.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the Proxy.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF**
**THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

85.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

86.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

87.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Transaction;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8437

1      E.      Granting such other and further relief as this Court may deem just and proper.

2                                          **JURY DEMAND**

3          Plaintiff demands a trial by jury on all issues so triable.

4   Dated:  December 27, 2019

5                                                      Respectfully submitted,

6                                                      **FARUQI & FARUQI, LLP**

7   **OF COUNSEL:**                                    By: _/s/ Benjamin Heikali_
                                                       Benjamin Heikali, Bar No. 307466
8   **FARUQI & FARUQI, LLP**                           10866 Wilshire Blvd., Suite 1470
                                                       Los Angeles, CA 90024
9   Nadeem Faruqi                                      Tel.: (424) 256-2884
    James M. Wilson, Jr.                               Fax: (424) 256-2885
10  685 Third Ave., 26th Fl.                           Email: bheikali@faruqilaw.com
    New York, NY 10017
11  Telephone: (212) 983-9330                          *Counsel for Plaintiff*
    Email: nfaruqi@faruqilaw.com
12  Email: jwilson@faruqilaw.com

13  *Counsel for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                            - 25 -
28  **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
    THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Phillip Krieger ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed a draft complaint against Pattern Energy Group Inc. ("Pattern") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.  Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.  Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in Pattern securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.  In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 27th day of December, 2019.

Phillip Krieger

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 03/15/19 | 225 |
|  |  |  |
|  |  |  |